**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ASSOCIATED PRODUCERS, LTD, *et al.*, | |
| Plaintiffs, | |
| v. | **Civil Action No. 14-397 (CKK)** |
| VANDERBILT UNIVERSITY, *et al.*, | |
| Defendants. | |

**MEMORANDUM OPINION**
(December 23, 2014)

Associated Producers, LTD, and Simcha Jacobovici (collectively, "Plaintiffs"), filed suit against Vanderbilt University ("Vanderbilt") and Robin M. Jensen ("Jensen") for Intentional Interference with Prospective Economic Advantage and Business Relations. Plaintiffs allege that Defendants intentionally interfered with Plaintiffs' contract with National Geographic to produce an "archeological film concerning the burial cave in Jerusalem" ("the documentary"). Presently before the Court are Defendant Vanderbilt's and Defendant Jensen's Motions to Dismiss or, in the alternative, to Transfer. Upon consideration of the pleadings,[1] the relevant legal authorities, and the record as a whole, the Court finds that it does not have personal jurisdiction over Defendant Vanderbilt and thus GRANTS Defendant Vanderbilt's Motion to Dismiss and dismisses Vanderbilt from this case. The Court does find, however, that it has personal

---

[1] The Court's consideration has focused on the following documents: Defendant Jensen's Motion to Dismiss or, in the alternative, to Transfer ("Def. Jensen Mot."), ECF No. [13]; Defendant Vanderbilt's Motion to Dismiss ("Def. Vanderbilt Mot."), ECF No. [15]; Plaintiffs' Opposition to Defendants' Motions ("Pls.' Opp'n"), ECF No. [16]; Defendant Jensen's Reply to Opposition to Defendants' Motions ("Def. Jensen Reply"), ECF No. [19]; Defendant Vanderbilt's Reply to Opposition to Defendants' Motions ("Def. Vanderbilt Reply"), ECF No. [20].

jurisdiction over Defendant Jensen, that venue is proper in this district, that it would not be in the interests of justice to transfer this case, and that Plaintiffs' claims are not barred by the statute of limitations.  Accordingly, the Court DENIES Defendant Jensen's Motion to Dismiss or, in the alternative, to Transfer.

## I.   BACKGROUND

For the purposes of these motions, the Court accepts as true the well-pleaded allegations in Plaintiffs' Complaint.   In or around September 2010, National Geographic, whose headquarters are in the District of Columbia, commissioned Plaintiffs to make an archaeological documentary concerning a burial cave in Jerusalem.   Compl. ¶ 13.   Defendant Jensen, a Professor at Vanderbilt University, agreed to appear as an expert on early Christian art in a section of the documentary.  *Id.* ¶ 15.   Defendant Jensen "required and received approval from her employer Defendant Vanderbilt before she could take part in the film project."  *Id.* ¶ 16. Defendant Vanderbilt "expects and requires that[,] as part of their job duties[,] its professors, such as Jensen, will not only teach students in the classroom but also promote and raise the visibility of the university through media appearances."  *Id.* ¶ 17.   Defendant Jensen signed a release form with Plaintiffs permitting Plaintiffs to display her likeness and affiliation with Defendant Vanderbilt in the documentary.  *Id.* ¶ 18.   Defendant Jensen also executed a Non-Disclosure Agreement with National Geographic.  *Id.* ¶ 20.

To assess the documentary before it aired on the National Geographic channel, "National Geographic organized a group of consultants to opine on the viability of the cave documentary as a legitimate historical and archaeological work."  *Id.* ¶ 22.   Defendant Jensen was recommended to the panel of consultants by Plaintiff Jacobovici, and Defendant Jensen became one of the consultants.  *Id.* In or about late May 2011, the consulting panel held a meeting at National

Geographic's headquarters in the District of Columbia, which Defendant Jensen attended.  *Id.* ¶¶ 23-24.  At the panel's meeting, Defendant Jensen voiced her support for the documentary, noting that the documentary's findings may be "very, very important."  *Id.* ¶ 25.  According to Plaintiffs, "Defendant Jensen's views dramatically changed subsequent to the panel meeting after she became acquainted with an unnamed co-conspirator . . . ."  *Id.* ¶ 26.  The co-conspirator relayed to Defendant Jensen "a litany of unsubstantiated rumors about [Plaintiff] Jacobovici."  *Id.* ¶ 27.  Subsequently, Defendant Jensen communicated through e-mails and telephone calls to "National Geographic company officials and other National Geographic panel members" that she had "second thoughts" about the documentary being aired.  *Id.* ¶ 29.  Defendant Jensen also allegedly passed on the rumors to National Geographic officials and panel members.  *Id.* ¶ 31. Plaintiffs allege that Defendant Jensen used "her position with Defendant Vanderbilt and her voice as a consultant to National Geographic" to "put [Plaintiffs] out of business."  *Id.*

Plaintiffs were later contacted by National Geographic's counsel and informed that National Geographic "did not want to proceed with the project."  *Id.* ¶ 36.  Plaintiffs subsequently sold the rights to the documentary to the Discovery Channel, but allege that the delay in the release of the documentary caused them significant financial harm.  *Id.* ¶¶ 37, 43.  In addition, Plaintiffs allege that "Defendant Jensen's actions irreparably damaged Plaintiffs' pre-existing profitable business relationship with National Geographic" and that "[s]ince 2010, Plaintiffs have done no work for National Geographic."  *Id.* ¶ 42.

Plaintiffs first became aware of Defendant Jensen's allegedly wrongful conduct on or about July 16, 2013, when Plaintiffs discovered a series of email correspondences between Defendant Jensen and the co-conspirator "that included defamation and information regarding a conspiracy to end Plaintiffs' careers."  *Id.* ¶ 45.  On March 12, 2014, Plaintiffs filed suit in this

Court against Defendant Jensen and her employer, Vanderbilt, for intentional interference with prospective economic advantage and business relations.  Defendants now move the Court to dismiss this case arguing that this Court lacks personal jurisdiction over Defendants, that venue in this district is improper, and that Plaintiffs fail to state a claim against Defendants.  In the alternative, Defendants move the Court to transfer this case to the Middle District of Tennessee pursuant to 28 U.S.C. 1404(a).

## II.  LEGAL STANDARD

### A.  Rule 12(b)(2)

When personal jurisdiction is challenged under Rule 12(b)(2), the plaintiff bears the burden of establishing a factual basis for asserting personal jurisdiction over a defendant. *See Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990). To establish that personal jurisdiction exists, the plaintiff cannot rest on bare allegations or conclusory statements but "must allege specific acts connecting [each] defendant with the forum." *Second Amendment Found. v. U.S. Conference of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001) (internal quotation omitted).  "[T]he general rule is that a plaintiff must make a *prima facie* showing of the pertinent jurisdictional facts." *First Chi. Int'l v. United Exch. Co.,* 836 F.2d 1375, 1378 (D.C. Cir. 1988). "To make such a showing, the plaintiff is not required to adduce evidence that meets the standards of admissibility reserved for summary judgment and trial[;]" but rather, the plaintiff may "rest [his] arguments on the pleadings, 'bolstered by such affidavits and other written materials as [he] can otherwise obtain.' " *Urban Inst. v. FINCON Servs.*, 681 F.Supp.2d 41, 44 (D.D.C. 2010) (quoting *Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005)).   Conclusory statements, however, "[do] not constitute the *prima facie* showing necessary to carry the burden

of establishing personal jurisdiction." *Naartex Consulting Corp. v. Watt,* 722 F.2d 779, 787-88 (D.C. Cir. 1983).

In order to successfully carry its burden, the plaintiff must allege "specific facts that demonstrate purposeful activity by the defendant in the District of Columbia invoking the benefits and protections of its laws." *Helmer v. Doletskaya,* 290 F.Supp.2d 61, 66 (D.D.C. 2003), *rev'd on other grounds,* 393 F.3d 201 (D.C. Cir. 2004). The Court need not treat all of a plaintiff's allegations as true; rather, the Court "may receive and weigh affidavits and other relevant matter to assist in determining the jurisdictional facts." *Exponential Biotherapies, Inc. v. Houthoff Buruma N.V.,* 638 F.Supp.2d 1, 6 (D.D.C. 2009) (citation omitted). "In determining whether such a basis exists, factual discrepancies appearing in the record must be resolved in favor of the plaintiff." *Crane,* 894 F.2d at 456 (citing *Reuber v. United States,* 750 F.2d 1039, 1052 (D.C. Cir. 1984)). Courts "will consider all allegations of jurisdictional facts in a light most favorable to the assertion of personal jurisdiction." *Richard v. Bell Atlantic Corp.*, 946 F.Supp. 54, 67 (D.D.C. 1996); *see also Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979) (internal citation omitted) (court must give plaintiff "the benefit of all inferences that can be derived from the facts alleged").

## B. Rule 12(b)(3)

When presented with a motion to dismiss for improper venue under Rule 12(b)(3), the Court "accepts the plaintiff's well-pled factual allegations regarding venue as true, draws all reasonable inferences from those allegations in the plaintiff's favor and resolves any factual conflicts in the plaintiff's favor." *James v. Verizon Servs. Corp.,* 639 F.Supp.2d 9, 11 (D.D.C. 2009). "Because it is the plaintiff's obligation to institute the action in a permissible forum, the plaintiff usually bears the burden of establishing that venue is proper." *Freeman v. Fallin,* 254

F.Supp.2d 52, 56 (D.D.C. 2003).   In order "[t]o prevail on a motion to dismiss for improper venue, the defendant must present facts that will defeat the plaintiff's assertion of venue." *Khalil v. L–3 Commc'ns Titan Grp.,* 656 F.Supp.2d 134, 135 (D.D.C. 2009) (internal citation omitted).   "Unless there are pertinent factual disputes to resolve, a challenge to venue presents a pure question of law." *Williams v. GEICO Corp.,* 792 F.Supp.2d 58, 62 (D.D.C. 2011).

### C. Rule 12(b)(6)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint on the grounds it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The Federal Rules of Civil Procedure require that a complaint contain " 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.' " *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *accord Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (*per curiam*). "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557). Rather, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court must construe the complaint in the light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations. *In re United Mine*

6

*Workers of Am. Employee Benefit Plans Litig.*, 854 F.Supp. 914, 915 (D.D.C. 1994).  A motion to dismiss may be granted on statute of limitations grounds only if apparent from the face of the complaint.  *See Nat'l R.R. Passenger Corp. v. Lexington Ins. Co.,* 357 F.Supp.2d 287, 292 (D.D.C. 2005) ("A defendant may raise the affirmative defense of a statute of limitations via a Rule 12(b)(6) motion when the facts giving rise to the defense are apparent on the face of the complaint").

## III. DISCUSSION

### A.  Personal Jurisdiction

Personal jurisdiction within the District of Columbia may be established under two different provisions: (1) general jurisdiction under D.C. Code § 13-422 (2001); and (2) specific jurisdiction under D.C. Code § 13-423 (2001).  Plaintiffs only contend that this Court has personal jurisdiction over Defendants pursuant to D.C. Code § 13-423(a)(1), which permits the exercise of jurisdiction for a claim "arising from [a] person's . . . transacting any business in the District of Columbia."  District of Columbia courts have interpreted this specific jurisdiction provision "to provide jurisdiction to the full extent allowed by the Due Process Clause."  *United States v. Ferrara,* 54 F.3d 825, 828 (D.C. Cir. 1995).  Accordingly, "the statutory and constitutional jurisdictional questions, which are usually distinct, merge into a single inquiry": would exercising personal jurisdiction accord with the demands of due process?  *Id.*  A court's jurisdiction over a defendant satisfies due process when there are "minimum contacts," *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945), between the defendant and the forum "such that he should reasonably anticipate being haled into court there," *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980). Such minimum contacts must show that "the defendant purposefully avail[ed] [him]self of the privilege of conducting activities

within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253 (1958).

"[P]arties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanction in the other State for the consequences of their activities." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 473 (1985) (internal quotation marks and citation omitted).  However, an out-of-state resident must do more than simply enter into a contract with a resident of the District to have minimum contacts with the District; the contract must have a " 'substantial connection' with the forum." *Helmer,* 393 F.3d at 205 (quoting *McGee v. Int'l Life Ins. Co.,* 355 U.S. 220, 223 (1957)).  Thus, the "transacting any business" provision of §13-423 has been held to apply to "those contractual activities of a nonresident defendant which cause a consequence" in the District of Columbia. *QueTel Corp. v. Columbia Commc'ns, Intern. Inc.*, 779 F. Supp. 183, 185 (D.D.C. 1991) (quoting *Mouzavires v. Baxter*, 434 A.2d 988, 992 (D.C. 1981)).

### a.  Defendant Jensen

Plaintiffs argue that this Court has specific jurisdiction over Defendant Jensen because Defendant Jensen transacted business with National Geographic in the District of Columbia and her business interactions with National Geographic form the foundation of Plaintiffs' intentional interference with business relations and prospective economic advantage claims.  Pls.' Opp'n at 14.  Specifically, Plaintiffs argue that Defendant Jensen is subject to this Court's jurisdiction because she was "retained by National Geographic to serve as consultant on whether to air the documentary."  *Id.*; *see also* Compl. ¶ 22 ("National Geographic organized a group of consultants to opine on the viability of The Cave Documentary . . . Defendant Jensen was one of the consultants.").  National Geographic is headquartered in the District of Columbia and held a

panel meeting of the documentary consultants in the District of Columbia in May 2011, which Defendant Jensen attended.  *See* Compl. ¶¶ 23-24 ("In or about late May 2011, the panel held a meeting at National Geographic's headquarters in Washington, DC.  Those in attendance at the panel's meeting included Defendant Jensen.").  Plaintiffs further allege that the emails and phone calls Defendant Jensen made subsequent to the panel meeting were sent in her capacity as a National Geographic consultant to National Geographic officials in the District of Columbia. Pls.' Opp'n at 14; Compl. ¶ 29 ("Defendant Jensen thereafter communicated through e-mails and telephone calls to National Geographic company officials and other National Geographic panel members . . ."); *id.* ¶ 31 ("Defendant Jensen essentially agreed with her co-conspirator to 'put Jacobovici and Associated Producers out of business' by using her position with Defendant Vanderbilt and *her voice as a consultant to National Geographic* to achieve that end." (emphasis added)).  Therefore, Plaintiffs argue, Defendant Jensen's consulting relationship with National Geographic and her tortious activity arising out of that relationship were centered in the District of Columbia.  Pls.' Opp'n at 14.

The Court agrees that, when viewed in the light most favorable to the assertion of personal jurisdiction, Plaintiffs have alleged sufficient facts to establish that Defendant Jensen transacted business with National Geographic in the District of Columbia and that Plaintiffs' claims arose out of these business transactions.  In arguing that this Court lacks personal jurisdiction over Defendant Jensen, Defendants reframe Defendant Jensen's visit to the District of Columbia and Defendant Jensen's emails and phone calls as two separate transactions, not one continuing transaction.  *See* Def. Jensen Mot. at 8.  Defendants contend that there is no relationship between Defendant Jensen's visit to the District and her later tortious conduct and argue that, in any event, "a single visit to the forum . . . does not in itself constitute purposeful

availment of a forum." *Id.* Defendants view Defendant Jensen's emails and calls as a separate transaction and as the only transaction out of which Plaintiffs' claims arose. Defendants argue that these transactions cannot establish personal jurisdiction because Plaintiffs have not alleged to what jurisdiction the emails and calls were directed and, in any event, "email and telephone communications do not constitute business transactions in the forum . . . ." *Id.* at 8-9.

The Court disagrees with Defendants' parsing of Defendant Jensen's activities related to National Geographic and the District of Columbia. Accepting the facts alleged in Plaintiffs' Complaint as true, Defendant Jensen was retained by National Geographic to serve as a consultant about Plaintiffs' documentary. Defendant Jensen traveled to the District of Columbia to serve on the National Geographic consulting panel. Defendant Jensen's subsequent emails were not a separate and distinct act from this consulting relationship, but part of a single course of conduct with Defendant Jensen's other consulting activities. Indeed, as Plaintiffs allege, "Defendant Jensen agreed to . . . put [Plaintiffs] out of business by using . . . her voice as a consultant to National Geographic" and, thus, sent her allegedly defamatory emails to National Geographic officials and "*other National Geographic panel members*." Compl. ¶¶ 29, 31 (emphasis added). Accordingly, the Court rejects Defendants' argument that Defendant Jensen's emails and phone calls constitute a separate transaction and are the only relevant business transaction for purposes of personal jurisdiction.

The Court agrees with Plaintiffs that the consulting relationship between Defendant Jensen and National Geographic was centered in the District of Columbia. National Geographic is headquartered in the District of Columbia, and Defendant Jensen traveled to the District to serve on the consulting panel. Even if it is reasonable to assume, as Defendants argue, that Defendant Jensen made her allegedly defamatory emails and telephone calls in Tennessee, it is

also reasonable to assume that these emails and calls were directed at the District of Columbia since they were directed at National Geographic officials and National Geographic is headquartered in the District. Thus, in sending emails and making telephone calls to National Geographic officials, Defendant Jensen was continuing to direct her consulting activity at the District of Columbia.

Defendants are correct that email and telephone communications sent into the District of Columbia are not sufficient to constitute business transactions in themselves, even if they are made pursuant to an underlying contract between a resident business and a nonresident Defendant.  *See Thompson Hine, LLP v. Taieb*, 734 F.3d 1187, 1192 (D.C. Cir. 2013) (finding that "at least ten emails" sent by a non-resident defendant to a law firm in the District of Columbia retained by the defendant did not establish a basis for personal jurisdiction); *FC Inv. Group LC v. IFX Mkts., Ltd.*, 529 F.3d 1087, 1095 n.8 (D.C. Cir. 2008) (regular telephone calls by London-based broker defendant to assist District of Columbia company in making investments deemed insufficient to establish long-arm jurisdiction under § 13-423(a)(1), (a)(4)); *Gibbons & Co., Inc. v. Roskamp Inst.*, No. 06-CV-720, 2006 WL 2506646, at *3 (D.D.C. Aug. 28, 2006) (concluding that the defendant's transmission of fifty to seventy-five emails and seventy-five phone calls to District of Columbia company with whom Florida defendant had a lobbying contract did "not constitute a deliberate and voluntary association with the District that rises to the level of transacting business within the District.").  However, the cases relied upon by Defendants for this proposition are distinguishable from the present case.  In each of these cases, the focus of the relevant business activity was outside of the forum and only defendants' emails and phone calls brought defendants' business activities into the forum.  *See, e.g.*, *Thompson Hine*, 734 F.3d at 1192 (relevant business activity involved contract between non-resident

defendant and District of Columbia law firm to perform work pertaining to a matter in Oregon); *FC Inv. Group LC*, 529 F.3d at 1095 (relevant business activity involved plaintiff company with its principal place of business in the District of Columbia working with defendant currency broker based in London to invest in an investment company); *Gibbons*, 2006 WL 2506646, at *3 (no relevant business activity in the District of Columbia because only District activities were Congressional lobbying activities that are not eligible to establish jurisdiction pursuant to the "government contacts exception").  Here, by contrast, Defendant Jensen's business activity was directed at the District of Columbia where National Geographic—who had retained her to consult on their activities—was headquartered, where Defendant Jensen visited to serve on a National Geographic consulting panel, and where she directed her allegedly defamatory emails and telephone calls.  In other words, the business relationship between National Geographic and Plaintiffs had a "substantial connection" with the forum; indeed, the entire business activity between Defendant Jensen and National Geographic was focused on the District of Columbia, not just Defendant Jensen's emails and telephone calls.  The Court concludes that Plaintiffs have presented sufficient facts to establish that Defendant Jensen transacted business in the District of Columbia within the meaning of D.C. Code § 13–423(a)(1) and that Plaintiffs' claims arose out of this business.

Although it is unclear from the allegations in the Complaint if Defendant or National Geographic initiated the consulting relationship, "(t)he operative consideration is that the defendant's contacts with the forum were deliberate, rather than fortuitous, so that the possible need to invoke the benefits and protections of the forum's laws was reasonably foreseeable, if not foreseen, rather than a surprise."  *Product Promotions, Inc. v. Cousteau*, 495 F.2d 483, 496 (5th Cir. 1974) (footnote omitted).  The Court finds that Plaintiffs have sufficiently alleged facts

showing that Defendant Jensen's contacts with the District of Columbia were deliberate, not fortuitous.   Accordingly, exercising personal jurisdiction over Defendant Jensen comports with notions of "fair play and substantial justice." *Int'l Shoe,* 326 U.S. at 316.

### b.  Defendant Vanderbilt

Defendant Vanderbilt also moves the Court to dismiss Plaintiffs' claims against the University for lack of personal jurisdiction.  As with Defendant Jensen, Plaintiffs invoke D.C. Code § 13-423(a) to establish personal jurisdiction over Vanderbilt.  Personal jurisdiction may exist if a person transacts business in the District of Columbia through an agent.  *See* D.C. Code § 13–423(a).  "Generally an agency relationship results when one person authorizes another to act on his behalf subject to his control, and the other person consents to do so." *Smith v. Jenkins,* 452 A.2d 333, 335 (D.C. 1982).  "Without control over the forum state actor, it cannot be said that the nonresident defendant is purposefully avail[ing] itself of the privilege of conducting activities within the forum State." *Id.* (internal quotation marks and citation omitted).

Here, Plaintiffs argue that this Court has personal jurisdiction over Defendant Vanderbilt because Defendant Jensen was acting within the scope of her employment at Vanderbilt when transacting business and committing the tortious act in the District.  In arguing that Defendant Jensen was acting within the scope of her employment, Plaintiffs point to the allegations in their Complaint that Defendant Jensen was "required and received approval" from Vanderbilt "before she could take part in the film project," Compl. ¶ 16, that she "obtain[ed] approval from Defendant Vanderbilt . . . permitting Plaintiffs to display her likeness and affiliation with Defendant Vanderbilt in the documentary," *id.* ¶ 18, and that she "placed below her signature [on her allegedly defamatory emails] her business affiliation with Vanderbilt," Pls.' Opp'n at 21. Plaintiffs also allege that "Defendant Vanderbilt expects and requires that as part of their job

duties its professors, such as Jensen, will . . . promote and raise the visibility of the university through media appearances." Compl. ¶ 17.

While Plaintiffs' allegations could arguably establish that Defendant Jensen was acting within the scope of her employment, the proper inquiry is whether Defendant Jensen was acting as an *agent* of Vanderbilt. *See* D.C. Code § 13–423(a). The Court finds that Plaintiffs have not sufficiently alleged an agency relationship between Defendant Vanderbilt and Defendant Jensen as relates to Defendant Jensen's participation in the documentary project, much less her consulting work with National Geographic. Plaintiffs themselves argue that the allegations in the Complaint "would demonstrate to an objective observer that (1) Vanderbilt knew of the activity in question engaged in by Jensen, (2) approved the same, (3) indeed encouraged her to carry out those activities because it would benefit the university, and (4) in carrying out that activity Jensen believed it necessary to place the imprimatur of the university behind it by using her business signature block." Pls.' Opp'n at 21 ("In short, Jensen was engaging in conduct of the kind that Vanderbilt hoped and expected its faculty to perform, and that was motivated, at least in part from the university's perspective, to benefit itself."). However, an employer's simple encouragement and approval of an employee's outside activities without any allegation that the employee's activities were in any way subject to the employer's control does not establish an agency relationship. Moreover, simply alleging that Defendant Vanderbilt permitted Plaintiff to display Defendant Jensen's affiliation with Vanderbilt and that Defendant Jensen (not Vanderbilt) "believed it necessary" to place the University's name in her signature on her personal emails does not establish that Defendant Vanderbilt actually "authorize[d] another to act on [its] behalf." *Smith*, 452 A.2d at 335. Accordingly, the Court finds that Plaintiffs have failed to plead that the Court has personal jurisdiction over Defendant Vanderbilt and, therefore, the

Court shall dismiss Defendant Vanderbilt from this case.[2]  As the Court has dismissed Defendant

Vanderbilt from this case, the Court will only consider the remaining bases for dismissal as they

relate to Defendant Jensen.

## B.  Venue

Defendant Jensen also moves the Court to dismiss the Complaint pursuant to Federal

Rule of Civil Procedure 12(b)(3) for improper venue or, in the alternative, transfer the case to a

proper judicial district pursuant to 28 U.S.C. § 1404(a).

### i.   Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(3)

Under 28 U.S.C. § 1391(b), venue in a diversity case is appropriate in:

(1) a judicial district in which any defendant resides, if all defendants are residents
of the State in which the district is located; (2) a judicial district in which a
substantial part of the events or omissions giving rise to the claim occurred, or a
substantial part of property that is the subject of the action is situated; or (3) if
there is no district in which an action may otherwise be brought as provided in

---

[2] In a footnote in its Opposition, Plaintiffs also argue that personal jurisdiction exists over Defendant Vanderbilt pursuant to D.C. Code § 13-423(a)(4), which extends specific jurisdiction over a defendant or his agent "causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia."  Plaintiffs argue that the Court has personal jurisdiction over Defendant Vanderbilt under this provision because Defendant Jensen, acting as Vanderbilt's agent, caused tortious injury in the District of Columbia and Vanderbilt's contacts with the District through its Office of Federal Relations, which advocates for federal legislation, regulations, and policy, satisfies the "persistent contact" requirement.  Pls.' Opp'n at 18 n. 1. Personal jurisdiction over Defendant Vanderbilt cannot be established under this provision because Plaintiffs have failed to establish that Defendant Jensen acted as an agent of Defendant Vanderbilt and because Vanderbilt's Office of Federal Relations falls under the government contacts exception and thus cannot be considered in the jurisdictional analysis.  *See Ferrara,* 54 F.3d at 831 (explaining that the government contacts exception provides that "contact with a federal instrumentality located in the District of Columbia will not give rise to personal jurisdiction");  *Sierra Club v. Tenn. Valley Auth.,* 905 F.Supp.2d 356, 362-63 (D.D.C. 2012) ("D.C. Courts have long carved out a 'government contacts' exception for alien corporations which keep an office in the District for the purpose of maintaining contact with Congress and governmental agencies.").

this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

Defendant contends that venue is improper in the District of Columbia because neither defendant resides in the District of Columbia and "virtually no part of the acts or omissions giving rise to the claim occurred [in the District]." Def. Jensen Mot. at 20.

Contrary to Defendant's characterizations, the Court finds that a substantial part of the events giving rise to Plaintiffs' claims occurred in the District of Columbia. As discussed above, the Court views the panel meeting and the subsequent emails and phone calls as part of one continuing business transaction arising out of Defendant Jensen's consulting role for National Geographic. This business transaction formed the basis for Plaintiffs' claims. Defendant Jensen's consulting relationship with National Geographic was centered in the District of Columbia, and it was this relationship that gave her a platform to make the communications that allegedly interfered with Plaintiffs' contract with National Geographic. As already discussed, the Court finds that it is reasonable to assume that Defendant Jensen's emails and telephone calls were directed at the District of Columbia since they were sent to National Geographic officials, and National Geographic is headquartered in the District of Columbia, and the consulting panel was convened in the District of Columbia. It is also reasonable to assume that National Geographic's decision to pull out of the documentary project occurred in the District of Columbia where National Geographic's headquarters are located. Accordingly, the Court finds that a substantial portion of the operative events in this case occurred in the District of Columbia.

The Court recognizes that events relevant to Plaintiffs' claims occurred in several locations, including Tennessee where it is reasonable to assume that Defendant Jensen sent her emails and placed her telephone calls and communicated with her alleged unnamed co-

conspirator.[3]   However, the Court finds that a substantial part of the events giving rise to Plaintiffs' claims occurred in the District of Columbia and "[n]othing in section 1391(b)(2) mandates that a plaintiff bring suit in the district where the *most substantial* portion of the relevant events occurred . . . ." *Modaressi v. Vedadi*, 441 F.Supp. 2d 51, 57 (D.D.C. 2006) (emphasis in original).   Accordingly, the Court denies Defendant's motion to dismiss Plaintiffs' claims for improper venue.

### ii. Motion to Transfer Pursuant to 28 U.S.C. §1404(a)

In the alternative, Defendant Jensen moves the Court to transfer this case to the Middle District of Tennessee.   Pursuant to 28 U.S.C. § 1404(a), a court may transfer a case to any other district where it might have been brought "[f]or the convenience of parties and witnesses, in the interest of justice."   Determining whether transfer is appropriate pursuant to 28 U.S.C. § 1404(a) calls for a two-part inquiry.   The Court must first ask whether the transferee forum is one where the action "might have been brought" originally.   *Id.*   Second, the Court must consider whether private and public interest factors weigh in favor of transfer.   *Lentz v. Eli Lilly & Co.*, 464 F. Supp. 2d 35, 37 (D.D.C. 2006).   In considering whether a transfer would be proper, the Court may consider the following "private interest" factors:

> (1) the plaintiff's choice of forum, unless the balance of convenience is strongly in favor of the defendants; (2) the defendants' choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses of the plaintiff and defendant, but only to the extent that the

---

[3] Defendant Jensen spends much of her venue analysis arguing that "[t]he existence of any conspiracy involving Dr. Jensen, Vanderbilt, and an 'unnamed' but not unknown 'co-conspirator' . . . will require considerable factual inquiry" and that the District's connection to the conspiracy and evidence of the conspiracy is insubstantial.   Def. Jensen Mot. at 20. The Court finds Defendant Jensen's focus on the location of evidence of any conspiracy misplaced because Plaintiffs do not bring any claims of civil conspiracy, and the existence of a conspiracy is irrelevant to the tortious interference claims Plaintiffs do bring since those claims rely exclusively on Defendant Jensen's actions.

witnesses may actually be unavailable for trial in one of the fora; and (6) the ease
of access to sources of proof.

*Greater Yellowstone Coalition v. Bosworth*, 180 F. Supp. 2d 124, 127 (D.D.C. 2001).  The Court

must also weigh public interest considerations such as (1) the transferee court's familiarity with

the governing laws and the pendency of related actions in the transferee's forum; (2) the relative

congestion of the calendars of the potential transferee and transferor courts; and (3) the local

interest in deciding local controversies at home.  *Id.* at 128.  Section 1404(a) vests discretion in

the district court to conduct an "individualized, case-by-case" analysis.  *Stewart Org., Inc. v.

Ricoh Corp.*, 487 U.S. 22, 29 (1988).  The "plaintiff's choice of forum is ordinarily entitled to

deference," *Nat'l Ass'n of Home Builders v. U.S. Envt'l Prot. Agency*, 675 F. Supp. 2d 173, 179

(D.D.C. 2009) (citation omitted).  The moving party bears the burden of establishing that

convenience and the interests of justice weigh in favor of a transfer to that district.  *See Int'l Bhd.

of Painters & Allied Trades Union v. Best Painting and Sandblasting Co., Inc.*, 621 F. Supp. 906,

907 (D.D.C. 1985).

It is undisputed that this action might have been brought originally in the Middle District

of Tennessee because Defendant is a resident of Tennessee.  Accordingly, the Court must

consider whether private and public interest factors weigh in favor of transfer.  "[P]laintiff's

choice of forum is a 'paramount consideration in any determination of a transfer request.' "

*Sheffer v. Novartis Pharms. Corp.*, 873 F.Supp.2d 371, 375 (D.D.C. 2012) (quoting

*Thayer/Patricof Educ. Funding, L.L.C. v. Pryor Res.*, 196 F. Supp. 2d 21, 31 (D.D.C. 2002)).

Plaintiffs have selected the District of the District of Columbia as their forum.  Even though "less

deference is warranted where[, as here,] the chosen forum is not plaintiff's home forum," *Marks

v. Torres*, 576 F.Supp.2d 107, 111 (D.D.C. 2008), none of the other private or public-interest

factors outweigh the deference given to Plaintiffs' choice of forum.   Defendant's choice of forum, the Middle District of Tennessee, is not ordinarily entitled to deference.  *Sheffer*, 873 F.Supp.2d at 376.   The Court acknowledges that litigating in Tennessee would be more convenient for Defendant since she resides in Tennessee and that the two proposed districts appear equally convenient to Plaintiffs who reside outside the United States.   However, the convenience of witnesses and the ease of access to sources of proof weigh in favor of keeping this case in the District of Columbia.  *See id.* at 377 (quoting *Pyrocap Int'l Corp. v. Ford Motor Co.*, 259 F.Supp.2d 92, 97 (D.D.C. 2003)) ("The convenience of the witnesses has been described as 'the most critical factor' to examine when deciding a motion to transfer.").

Defendant contends that much of the evidence and witnesses will be in Tennessee, where Defendant Jensen resides and is employed and where her alleged tortious conduct took place.  Def. Jensen Mot. at 22.   Courts in this Circuit have repeatedly recognized that when the vast majority of essential fact witnesses are within the subpoena power of a proposed district this factor favors transfer to that district because it will be more convenient for fact witnesses to appear.  *See Dean v. Eli Lilly & Co.*, 515 F. Supp. 2d 18, 22-23 (D.D.C. 2007).  The evidence in Tennessee, however, will primarily be focused on Defendant Jensen's communications with her alleged co-conspirator and with National Geographic.   Thus, the primary, and potentially only, witness from Tennessee would be Defendant Jensen herself.  As Defendant Jensen is a party to this case, the concerns about the proposed district's subpoena power over potential witnesses which weigh heavily in the witness convenience analysis are not implicated here.  *See  MacMunn v. Eli Lilly Co.*, 559 F.Supp.2d 58, 61-62 (D.D.C. 2008) ("the fact that almost all of the *nonparty*, nonexpert witnesses reside in Massachusetts clearly weighs in favor of transfer" (emphasis added)).   By contrast, the individuals to whom the allegedly defamatory communications were

directed and the individuals responsible for the decision not to proceed with the documentary project—all National Geographic officials—are not parties to this case.  These individuals hold important information relevant to key questions of causation and identity in this case.  As these witnesses work in the District of Columbia and likely reside within this Court's subpoena power, the convenience of the witnesses and access to proof is best served by litigating this case in the District of Columbia.

As for the public-interest factors, this action arises primarily from events that occurred in or were directed at the District of Columbia.  Plaintiffs allegedly lost their reputation in the District of Columbia, and National Geographic ended their business relationship with Plaintiffs in the District.  Accordingly, it is accurate to say that Plaintiffs suffered their injury in the District of Columbia. As there is a "local interest in making local decisions about local controversies," *Greene v. National Head Start Ass'n, Inc.*, 610 F.Supp.2d 72, 75 (D.D.C. 2009), this interest weighs in favor of litigating this matter in the District of Columbia where the claims arose.

Moreover, District of Columbia law is likely to apply to this case.  The parties agree that underlying Plaintiffs' claims of intentional interference with business relations and prospective economic advantage are factual allegations that effectively amount to a defamation claim.  *See* Pls.' Opp'n at 7 ("Here, Plaintiffs' injury stem[s] from the damage done to their business reputation caused by Jensen's spreading of unsubstantiated rumor, misrepresentations, and lies. Such an injury is analogous to that brought for the prosecution of a defamation claim."); Def. Jensen Mot. at 16-18 (arguing that Plaintiffs' tortious interference claims are so "intertwined" with conduct sounding in defamation that the limitations period applicable to defamation claims should be applied).  "[T]he weight of authority considers that the law to be applied [in

defamation cases] is that of the place where the plaintiff suffered injury by reason of his loss of reputation." *Mastro v. Potomac Elec. Power Co*. 447 F.3d 843, 857 (D.C. Cir. 2006).  As Plaintiffs suffered their reputational and contractual injury in the District of Columbia, District of Columbia law is likely to apply and, accordingly, this district court—not the Middle District of Tennessee—will be most familiar with the law governing the issues at the heart of this case.  The proposed transferee court's relative unfamiliarity with the governing law weighs against transferring this case to the Middle District of Tennessee.  Accordingly, having weighed the public- and private-interest factors, the Court finds that it is not in "the interest of justice" to transfer this case to the Middle District of Tennessee.[4]

## C.  Failure to State a Claim: Statute of Limitations[5]

Finally, Defendant Jensen argues that Plaintiffs' claims are barred by the statute of limitations.  The parties agree that since the statute of limitations is procedural, the law of the District, the forum state, applies. *Nat'l R.R. Passenger Corp. v. Lexington Ins. Co.,* 357 F.Supp.2d 287, 292 (D.D.C. 2005).  The parties also agree that the one-year statute of limitations for defamation should control in this case because Plaintiffs' claims are "inextricably intertwined

---

[4]  Neither party addressed the relative congestion of the transferee and transferor courts in their briefs.  The Court notes that, according to the United States Courts' website, the proposed transferee and transferor districts have relatively similar levels of congestion.  The medium time from filing to disposition of a case in the District of the District of Columbia is 8.7 months while it is 10.5 months in the Middle District of Tennessee. *See* http://www.uscourts.gov/uscourts/Statistics/JudicialBusiness/2013/appendices/C05Sep13.pdf (last visited December 23, 2014).  In 2013, there were 1,911 cases pending in the District of the District of Columbia and 1,179 pending in the Middle District of Tennessee. *Id.*  Even if the Court were to concluded from these statistics that the District of the District of Columbia has a more congested docket, the Court finds that the public- and private-interest factors would weigh in favor of litigating this case in Plaintiffs' choice of forum, the District of Columbia.

[5]  As the Court has dismissed Defendant Vanderbilt from this case for lack of personal jurisdiction, the Court will address Defendant Vanderbilt's arguments about how Plaintiffs' Intentional Interference with Prospective Economic Advantage (Count I) and Intentional Interference with Business Relations (Count II) fail to state a claim.

with underlying allegations of defamation." Def. Jensen Mot. at 16 (citing D.C. Code § 12-301(4); *Jovanovic v. US-Algeria Business Council*, 561 F.Supp.2d 103, 113-14 (D.D.C. 2008) ("when a cause of action with no prescribed statute of limitations is 'intertwined' with one having a prescribed limitations period, District of Columbia courts apply the prescribed period.")); Pls.' Opp'n at 10 (conceding "that the claims complained of are 'intertwined' with what would be considered defamatory conduct" and applying the one-year statute of limitations for defamation).

The parties disagree, however, on when the statute of limitations began to run. Plaintiffs urge the Court to apply the "discovery rule," which provides that "the statute of limitations will not run until plaintiffs know or reasonably should have known that they suffered injury due to the defendants' wrongdoing," *Mullin v. Wash. Free Weekly, Inc.*, 785 A.2d 296, 299 (D.C. 2001). Pursuant to the discovery rule, Plaintiffs contend that the statute of limitations only began to run when Plaintiffs discovered Defendant Jensen's emails on July 16, 2013. Pls.' Opp'n at 10-11. Defendant, on the other hand, argues that the District of Columbia Court of Appeals has declined to adopt the discovery rule and thus the statute of limitations began to run when Defendant Jensen published her allegedly defamatory statements in 2011. Def. Jensen Mot. at 16, 18 (citing D.C. Code § 12-301(4); *DiLella v. Univ. of D.C. School of Law*, 570 F. Supp. 2d 1, 11 (D.D.C. 2008)).

Defendant is correct that "the D.C. Court of Appeals has expressly declined to decide whether the discovery rule applies to defamation claims." *McFadden v. Wash. Metro. Area Transit Auth.*, 949 F.Supp.2d 214, 221 (D.D.C. 2013). However, the court has suggested that "application of the discovery rule might be justified" in some defamation cases, including when "the defamatory statement [is] inherently undiscoverable, because it was published secretly

and/or the defendant took steps to prevent the plaintiff from uncovering the statement, or in the case of circulars, newsletters or even newspapers addressed to a specialized readership." *Mullin*, 785 A.2d at 299 n. 5.  "When faced with an undecided issue of state law, a federal court 'must resolve the issue according to 'the rule that [it] believe[s] [ ]the state's highest court, from all that is known about its methods of reaching decisions and the authorities it tends to rely on, is likely to adopt in the not too distant future.' " *McFadden*, 949 F.Supp.2d at 221 (quoting *Davis v. Grant Park Nursing Home LP,*639 F.Supp.2d 60, 69 (D.D.C. 2009)).  Based on the facts of this case, the Court finds that the D.C. Court of Appeals would be likely to apply the discovery rule. Although Plaintiffs have not alleged that Defendant Jensen made efforts to conceal her conduct, her publication of her allegedly defamatory statements via email and telephone calls to a limited selection of National Geographic officials and consulting panel members is akin to defamatory communications addressed to a "specialized readership" which the D.C. Court of Appeals in *Mullin* found warranted application of the discovery rule.  *See id.* at 222 (concluding that the D.C. Court of Appeals would likely adopt the discovery rule in a defamation case where statements were made at a hearing prior to the plaintiff's arrival, and only learned about upon receipt of the transcript).  Moreover, as Judge Reggie B. Walton explained in *McFadden*,

> [f]urther bolstering this conclusion [that the D.C. Court of Appeals would adopt the discovery rule] is the fact that the Maryland Court of Appeals has applied the discovery rule to defamation claims outside the mass media context. *See Sears, Roebuck & Co. v. Ulman,* 412 A.2d 1240, 1242 (Md. 1980); *Shepard v. Nabb,* 581 A.2d 839, 844 (Md. Ct. Spec. App. 1990). This point is significant because the " 'District [of Columbia] derives its common law from Maryland and decisions of Maryland courts on questions of common law are authoritative in the absence of District authority.' " *Solid Rock Church, Disciples of Christ v. Friendship Pub. Charter Sch., Inc.,*925 A.2d 554, 561 (D.C. 2007) (citation omitted).

*Id.*  Accordingly, the Court applies the discovery rule to Plaintiffs' claims.  As Plaintiffs allege that they discovered Defendant Jensen's allegedly defamatory communications in July 2013, and Plaintiffs thereafter filed suit against Defendants in March 2014, Plaintiffs claims are not barred by the statute of limitations.  The Court therefore denies Defendant Jensen's motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

## IV. CONCLUSION

For the reasons set forth above, the Court finds that it does not have personal jurisdiction over Defendant Vanderbilt.  Accordingly, the Court GRANTS Defendant Vanderbilt's Motion to Dismiss and DISMISSES WITHOUT PREJUDICE Plaintiffs' claims against Defendant Vanderbilt.  The Court, however, finds that it does have jurisdiction over Defendant Jensen.  The Court further finds that the United States District Court for the District of Columbia is a proper venue for this case, that Plaintiffs' claims are not barred by the statute of limitations, and that transfer of this case to the Middle District of Tennessee would not be "for the convenience of parties and witnesses, in the interest of justice."  Accordingly, Defendant Jensen's Motion to Dismiss or, in the alternative, to Transfer, is DENIED.  An appropriate Order accompanies this Memorandum Opinion.

                    /s/
**COLLEEN KOLLAR-KOTELLY**
UNITED STATES DISTRICT JUDGE